**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rodman Wolfe JORDAN,
Defendant–Appellant.**

**No. 88–2550.**

United States Court of Appeals,
Tenth Circuit.

Nov. 22, 1989.

John E. Green (William S. Price, U.S. Atty., with him on the briefs), Asst. U.S. Atty., W.D. Okl., Oklahoma City, Okl., for plaintiff-appellee.

Mike Brown of Brown, Harding, Brown, Fargason & Rice, Lubbock, Texas, and Daniel H. Benson, Texas Tech University (Ray Fargason of Brown, Harding, Brown, Fargason & Rice, Lubbock, Tex., with them on the briefs), for defendant-appellant.

Before McKAY, McWILLIAMS, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Mr. Jordan (Defendant) appeals his jury conviction on four counts of knowingly making a false statement to an insured savings and loan for the purpose of obtaining a loan, in violation of 18 U.S.C. § 1014 (1982).

Defendant asserts six errors: (1) the prosecution is barred by the statute of limitations; (2) the trial court erroneously instructed the jury concerning the limitations and republication of a false statement; (3) the indictment is multiplicitous; (4) there exists a fatal variance between the indictment and the evidence; (5) the trial court abused its discretion in ordering payment of restitution as a condition of probation; and (6) the trial court abused its discretion in ordering, as a condition of probation, that Defendant incur no new debts.

An overview of the facts is required to understand the assertions of error. The specific facts will be developed as necessary. Defendant gave to an FSLIC insured savings and loan a document that was represented to be a true copy of his 1981 federal income tax return (Form 1040). The savings and loan officer, in making the decision to make four separate loans to Defendant on four separate occasions, placed great reliance upon this document as it showed the Defendant's 1981 taxable income to be in excess of $120,000, thereby evidencing Defendant's capacity to repay the loans. Relying upon this information the savings and loan made four loans to the Defendant from March 23 through May 1983. Defendant's problems arose when he was unable to repay the loan. It was then learned that the document presented was not a true copy of Defendant's 1981 Federal tax return. The Form 1040 actually filed by the Defendant with the IRS showed a taxable income of approximately $16,000. The prosecution and convictions followed.

I.

### The Statute of Limitations

■ Defendant contends that, because he delivered the fictitious copy of his tax return to the savings and loan in February of 1983 and the indictment was not forthcoming until March 8, 1988, the prosecution is barred by the five-year statute of limitations enunciated by 18 U.S.C. § 3282 (1982).

To properly resolve Defendant's contention it becomes necessary to review the evidence relating to the date of submission of the fictitious tax return. In reviewing the evidence supporting a conviction, it is axiomatic that we must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to

the Government. The loan officer for the savings and loan testified that Defendant first delivered a "loan package" to the savings and loan in February of 1983 and this package included the fictitious Form 1040. He further testified that the package did not contain a suitable appraisal and the Defendant thereupon brought in a new package containing both a suitable appraisal and the fictitious Form 1040 on or after March 17, 1983. He further testified that this first loan was made on March 23, 1983, and the loan documents introduced into evidence support this date. This evidence clearly establishes that the fictitious Form 1040 was delivered to the savings and loan by the Defendant after March 8, 1983. Thus, that a trier of fact could have found, beyond a reasonable doubt, that Defendant delivered the fictitious Form 1040 to the savings and loan within the five-year period prior to March 8, 1988, which was the date the indictment was issued. This second delivery of the fictitious income tax return, made to induce the lender to make the first loan, constituted the "false statement" required for completion of a crime under 18 U.S.C. § 1014.

Defendant's argument that the prosecution is time barred is based upon a factual theory of the case that Defendant delivered the fictitious tax return in February 1983 and Defendant never again had anything to do with or say about this fictitious document. Defendant's factual theory is not supported by the record. It therefore follows that Defendant's legal theory has no merit. The prosecution was not barred by the applicable statute of limitations.

## II.

### Jury Instructions Concerning Republication

Defendant complains of error in the district court's charge to the jury concerning the statute of limitation and the doctrine of republication as related to limitations. Appellant's Brief at 21.

The district court gave to the jury the following instruction:

The Government is required by law to bring a criminal charge against an indi-vidual within five years of the commission of an unlawful act....

. . . .

You are instructed that the five year period in a case such as this begins to run on any of the following dates, whichever is later:

1. The date an alleged false statement was submitted to a financial institution.

2. The date an alleged false statement, previously submitted, was affirmatively relied upon by the defendant in subsequent dealings with the financial institution. This is known as "republication" of a previously submitted false document or statement, and does not require an actual delivery or physical resubmission of the alleged false document on each subsequent occasion.

Instruction No. 14. Counsel for the Defendant offered no objection to the instruction before or after it was given in the trial court. Appellant's Brief at 21.

■ This court has often stated the general rule that if an appellant fails to alert the trial court to claimed error, the issue cannot be raised for the first time on appeal unless plain error is held to apply. *E.g., United States v. Phillips*, 869 F.2d 1361, 1365 (10th Cir.1988), *cert. denied,* ── U.S. ──, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989); *United States v. Freeman*, 813 F.2d 303, 305 (10th Cir.1987). *See also* Fed.R.Crim.P. 30, 52(b). We therefore must analyze this assertion of error under the "plain error" standard.

■ Defendant argues that the instruction is an "erroneous misstatement" of the law regarding republication of a false statement, Appellant's Brief at 22, and cites to us as his only authority the case of *United States v. Brown*, 674 F.2d 436, 438 (5th Cir.1982). In *Brown*, the court found that, in the absence of a record revealing any direct reference to an earlier executed financial statement, or even an indirect or implicit reference to it, one may not be held liable for the making of a false statement. Defendant, in advancing this argument, as-

sumes the facts in the instant case are the same as or closely related to *Brown*. This is simply not so.

Defendant has cited no authority even suggesting the instruction itself may be erroneous. We find the instruction accurately reflects the law in this circuit regarding republication, as expressed in *United States v. Warnick*, 815 F.2d 1341, 1342–43 (10th Cir.1987).

■ In deciding the propriety of this instruction, again we must review the evidence contained in the record. Instructions may not ordinarily be reviewed in a vacuum where no facts are present. Reviewing the evidence in a light most favorable to the Government, as we must, we are persuaded by the following evidence. The savings and loan officer testified it was the bank's "normal procedure" to ask a loan applicant if he or she had a more recent tax return than the one on file with the institution. He stated he told the Defendant that the Defendant would not have to bring in a new Form 1040 for his subsequent loan applications, as the bank could use the financial statement that Defendant already submitted. Another bank officer testified that copies of the financial statement and Form 1040 were maintained in Defendant's consumer loan file and also in the separate file containing his application for a construction loan for the South Classen project. As these officers' testimony reveals, the Defendant submitted or adopted by reference the fictitious Form 1040 in each of his loan applications.

It cannot be disputed that Defendant was implicitly "resubmitting" his financial information initially provided to the savings and loans each time he applied for a subsequent loan. The Defendant could not reasonably expect the institution to make a loan without information on his financial situation, and the loan officer told Defendant that it could use the initial financial statement and tax return for the later loans. The Defendant thus "republished" the fictitious income tax return each time he applied for another loan. There was evidence that on each of the four occasions defendant applied for loans, the fictitious

IRS Form 1040 was "submitted" or relied on by Defendant as part of the loan application package. While *Warnick* did not even require that the defendant know the bank was incorporating his prior security agreements in his loan extension application, *see* 815 F.2d at 1342, here Defendant was aware that his financial statement was being so used.

It therefore becomes apparent that Defendant is asking us to judge the instruction on the basis of his factual theory, which is unsupported by the evidence. Defendant assumes the record shows the only time the Defendant represented the financial statement to be genuine was when he first brought the fictitious tax return into the bank in February of 1983. The evidence clearly establishes that the tax return was physically submitted on two occasions, in February and March of 1983. Moreover, Defendant was either asked by the lending officer prior to the making of each loan if the fictitious tax return was still his most current federal tax return or was informed that the bank would use it as his current financial statement. The instructions to the jury informed the jury that the Defendant had to *affirmatively* rely upon the false statement. The evidence supports this instruction, and the instruction was correct as a matter of law. Clearly, there was no "plain error" " 'undermin[ing] the fundamental fairness of the trial and contribut[ing] to a miscarriage of justice.' " *United States v. Swafford*, 766 F.2d 426, 428 (10th Cir.1985) (quoting *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985)).

### III.

#### Double Jeopardy

■ Defendant next argues that his multiple convictions violate the Fifth Amendment protection against double jeopardy, citing to us *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). As explained in *Blockburger*, when the same act or transaction is alleged as a violation in multiple counts, "the test to be applied to determine whether there are two offenses or only one, is whether each provi-

sion requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.

The illogic of Defendant's argument is his assumption that the only time the Defendant affirmatively held out the fictitious Form 1040 was when he first presented it to the financial institution in February 1983. The facts show that the tax return was also submitted on or about March 17, 1983, and that on each occasion Defendant secured a new loan he represented, directly or implicitly, the fictitious tax return as his most current. See discussion in part *II.*, *supra.*

In the instant case the evidence and the reasonable inferences to be drawn therefrom, viewed in a light most favorable to the government, show the Defendant on four separate occasions either presented the fictitious income tax return or indicated that it was still his most current return. The Defendant republished the fictitious tax return on each separate occasion; he did not publish it but once as urged by Defendant. Again, Defendant in making this argument relies upon the facts as he wishes they were, rather than as they in fact are.

## IV.

### *Variance*

■ Defendant next asserts there is a fatal variance between the allegations of the indictment, as limited by the bill of particulars, and the evidence adduced at trial. Specifically the Defendant asserts that the "allegations of the Bill of Particulars limited the Government's permissible case to proof of specific falsehoods in specific line items of the allegedly false IRS 1040." Appellant's Brief at 28–29.

The indictment charged Defendant "willfully submitted a false 1981 tax return stating his total income on line 21 as ... ($120,305.77), after knowingly submitting his official 1981 tax return to the Internal Revenue Service stating his total income on line 21 as ... ($16,481.88)."

Upon the motion of Defendant and by order of the district court, the Government filed a three-page bill of particulars setting forth that the fictitious income tax return submitted by the Defendant was false with reference to the business income reported on line 11, the rent and royalties income reported on line 17, the total income figure on line 21, the total amount of taxes, the estimated tax payments, and various other specified line items.

The proof by the Government at trial was the introduction into evidence of the true Form 1040 as actually filed by the Defendant with the IRS and the fictitious Form 1040 as presented by Defendant to the financial institution. These documents were coupled with the testimony of Defendant's secretary who testified that she signed Defendant's wife's signature on the fictitious return at the direction of the Defendant, and testimony by the defendant's accountant that neither he nor his firm had prepared the fictitious return, even though the fictitious return so indicated.

We have reviewed the return actually filed by the Defendant and the return submitted by the Defendant to the financial institution. It is sufficient to say that none of the line items specified by the Government on the fictitious return as being false is in agreement with the corresponding line item amount set forth in the Defendant's return filed with the IRS. The Government was not required to prove the true amount on each line, only the falsity of the entries in the form submitted to the savings and loan. All of the line item amounts on the fictitious return varied from the respective line item amounts reported to the IRS. It is therefore apparent that the income tax return submitted to the savings and loan was false with respect to each line item. The gravamen of Defendant's representation was that the fictitious return was a true copy of his tax return filed with the IRS. It then becomes clear that none of the line item amounts specified in the bill of particulars was true in the sense that these were the line amounts reported to the IRS. There was no variance between the indictment, the bill of particulars, and the proof adduced at trial.

## V.

### *Restitution*

The trial court sentenced the Defendant to concurrent terms of two years on each of the first three counts. Concerning count four, the trial court suspended the imposition of sentence and placed Defendant on probation for a period of five years, which is to be consecutive to the sentences imposed on the first three counts.[1] The trial court imposed special conditions of probation as follows:

> No. 1, the defendant will provide a yearly audited financial statement to the probation office; No. 2, no new debt will be incurred by the defendant; No. 3, he will provide any requested financial information to the probation office.
>
> [D]efendant will pay restitution in the amount of $83,465.76 to the [savings and loan involved].

Following conviction, the trial court entered its written order setting a hearing to determine the amount of loss to the victim financial institution pursuant to Fed.R. Crim.P. 32.[2] Pursuant to this order, an evidentiary hearing was subsequently held at which time the Defendant presented numerous exhibits, presented evidence and cross-examined the government's witnesses. Defendant's counsel, while making his closing argument to the court, urged the court to "punish" the Defendant "by ordering that he make restitution in the amount whatever the Court feels is proper, the 85 thousand some odd dollar amount or something in excess of that." Of course, counsel in making this statement was arguing for probation. The district court ordered restitution in the amount of $83,465.76, which was less than the amount urged by Defendant.

Defendant now asserts that, because the indictment failed to allege any specific amount of damages or loss, the district court could not properly order restitution.

We review a trial court's order concerning conditions of probation for abuse of discretion. *United States v. Tolla,* 781 F.2d 29, 34 (2d Cir.1986); *United States v. Lawson,* 670 F.2d 923, 929 (10th Cir.1982). We observe initially that Defendant has failed to comply with this court's Rule 28.2(d), which requires, as to each issue raised, a statement in the brief showing where the issue was raised and the trial court's ruling thereupon.[3] This court has reviewed the transcript of the hearing and has been unable to find where or, for that matter, if this issue was raised before the district court. We will, for the purpose of this opinion, assume this issue was raised before the district court in some portion of the record that counsel failed to designate as a part of the record.

■ We find Defendant's argument to be without merit. Actual damages flowing from a specific crime charged in the indictment of which the defendant was convicted may be properly ordered as restitution when the amount has been judicially determined pursuant to notice and hearing. A judicial hearing was held upon the issue of restitution. The hearing was held pursuant to written notice, and Defendant had a full and fair opportunity to present evidence, exhibits, and argument. Defendant, after specifically urging the district court to impose restitution in an amount higher than actually imposed, cannot now be heard to argue that restitution was improper.

■ Defendant cites to us *United States v. Whitney,* 785 F.2d 824, (9th Cir.1986), amended at 838 F.2d 404 (9th Cir.1988), as standing for the proposition that restitution may not be ordered unless the amount is set forth in the indictment or is contained in a signed plea agreement. On the contrary, according to the court in *Whitney,* the Ninth Circuit has suggested that alter-

---

1. It should be noted the offenses were committed between March and May 1983. Probation was therefore imposed pursuant to 18 U.S.C. § 3651 (1982).

2. Neither party designated this order as a part of the record.

3. It should be noted the Government has inexplicably failed to respond to any of Defendant's arguments concerning restitution.

native methods of fixing the amount of restitution might prove as reliable and fair. 838 F.2d at 404–05 (citing *United States v. Black*, 767 F.2d 1334, 1343 (9th Cir.), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985)). To read *Whitney* as urged by Defendant would be to hold that restitution can never be ordered unless the amount is charged in the indictment and proved beyond a reasonable doubt at trial or agreed to by Defendant in a signed plea agreement. We are not prepared to so hold and we can find no authority requiring such a holding. In the instant case Defendant was given notice and a hearing concerning restitution. The issues were resolved judicially. Defendant made no complaint concerning restitution or the procedures involved in resolving these issues until he came before this court. Nor has he cited any authority to us showing the trial court's procedures to be error.

■ Defendant next urges that "[t]he restitution ordered by the District Court is attributable to, and payable for, a debt discharged in bankruptcy." Appellant's Brief at 37. Again, Defendant has failed to set forth in his brief where or if this contention was brought to the attention of the district court. More importantly, Defendant fails to cite to this court any factual basis for this argument. The record designated to this court is totally devoid of any reference to whether the "debt" was discharged in bankruptcy.[4] Counsel for Defendant, in urging this factual contention, neglects to inform us as to when, where, or before what court this bankruptcy proceeding transpired or even the nature of the asserted bankruptcy proceedings. We do not know whether Defendant filed Chapter 7 or Chapter 13 proceedings. This court cannot and will not act solely upon the basis of general factual contentions raised for the first time on appeal. This court has carefully reviewed the transcript of the sentencing hearing, and we are unable to find any mention in this transcript that would justify our concluding that appellant filed bankruptcy or was discharged from the payment of any debts. We therefore decline to reach this question as there exists no factual basis in the record before us upon which to base an opinion.

## VI.

### Debt Incurrence

As a condition of probation, the district court ordered that Defendant incur "no new debts." Defendant asserts the trial court abused its discretion in imposing this condition. Defendant argues this condition is unnecessarily harsh and excessive and "is global, vague and not fine-tuned to reasonably relate to rehabilitation and public safety." Appellant's Brief at 45.

■ Prior to discussing the legal principles involved in resolving this contention, the factual setting must be complete. At least one witness during the course of the trial testified that Defendant had suggested to him that he fill out a false financial statement and use this fictitious financial statement as a basis to obtain a bank loan. The witness further testified that he asked Defendant what he thought would happen if he (Defendant) got caught and the Defendant answered "[i]t would be a slap on the hand because it's my first offense." The witness further testified that he asked Defendant what would happen if the note was called and Defendant replied that he would file bankruptcy. At the sentencing hearing the district judge remarked that he was troubled by several aggravating factors, including the fact that "there was more than minimal planning. It was a fraud that was carried out over a substantial period of time." The court was also concerned that the "defendant involved other people" and that Defendant's "testimony at trial was that he had done nothing wrong, that he had not violated the law,

---

**4.** We note for the record that the Supreme Court has apparently granted certiorari in *In re Johnson–Allen*, 871 F.2d 421 (3d Cir.), *cert. granted sub. nom., Pennsylvania Dep't of Pub. Welfare v. Davenport*, — U.S. —, 110 S.Ct. 49, 107 L.Ed.2d 18 (1989), where the question is: Are criminal restitution obligation debts subject to discharge under Chapter 13 of the Bankruptcy Code?

and that he had engaged in a course of conduct that was either lawful in his eyes or was done at the suggestion of others."

18 U.S.C. § 3651 provides in part that a court:

[W]hen satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

Federal trial courts are consequently accorded broad discretion. Their discretionary authority is bounded only by the Federal Probation Act and the requirement that conditions of probation be reasonably related to the simultaneous goals of rehabilitating the defendant and protecting the public. *United States v. Tolla,* 781 F.2d 29, 34 (2d Cir.1986); *United States v. Hussong,* 778 F.2d 567, 569–70 (10th Cir.1985); *United States v. Lawson,* 670 F.2d 923, 929 (10th Cir.1982). A defendant who seeks to overturn a particular condition of probation must establish that the court acted outside its discretionary authority in imposing it. *Tolla,* 781 F.2d at 32. It is axiomatic that particular conditions of probation should be tailored to meet the special problems of a particular defendant and that conditions of probation must be viewed in light of all the circumstances properly before the court.

It is obvious that Defendant's problems stemmed, in significant part, from improper use and creation of personal and commercial debt. The mere fact that a condition of probation restricts the Defendant's freedom to perform otherwise lawful activities is not dispositive of the reasonableness of the condition. *United States v. Terrigno,* 838 F.2d 371, 374 (9th Cir.1988). It cannot be an abuse of discretion to require a person to conduct his life without debt. Such a condition of probation is obviously designed to rehabilitate Defendant as well as to protect those persons who would be willing to extend Defendant credit. Members of our society exist who are unable to create debt. Likewise, many citizens are unwilling to create debt.

Restrictions prohibiting debt will plainly create a hardship upon a person who is used to borrowing and creating debt. However, a condition designed to protect would-be creditors and to teach Defendant how to handle his finances in a conservative fashion is reasonably related to the rehabilitation of Defendant and the protection of the public. It does not constitute an abuse of the trial court's broad discretion. Furthermore, it is not vague. The condition clearly prohibits Defendant from incurring any (i.e., personal or commercial) new debt during his probationary period. The language of the court could not be more plain. Defendant is forbidden from receiving credit or borrowing money during his probation.

The judgment is therefore AFFIRMED.