**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Diana L. WHITE, Defendant/Appellant.**

**No. 94-40045-01-SAC.**

United States District Court,
D. Kansas.

June 19, 1995.

Timothy J. Henry, Office of Federal Public Defender, Wichita, KS, for defendant Diana White.

Daniel A. Nastoff, James H. Robinette, Office of Staff Judge Advocate, Fort Riley, KS, for U.S.

## MEMORANDUM AND ORDER [1]

CROW, District Judge.

 On June 2, 1994, Diana L. White was convicted of driving under the influence of alcohol in violation of the Assimilative Crimes Act, 18 U.S.C. § 13,[2] and K.S.A. 8-1567(a)(3) at a trial before the Honorable John Thomas Reid, United States Magistrate Judge. On September 1, 1994, White was sentenced to serve a one year term of probation conditioned upon her serving 72 hours in jail, paying a $200 fine, successfully completing an inpatient substance abuse treatment program, and participation in an outpatient program. White, who operates a daycare center, was also required to disclose her conviction for the instant offense and her history of substance abuse to the Riley County Health Department and to the Riley County Social and Rehabilitations Services Chief of Employment Preparation Services. White was also prohibited from providing daycare until she successfully completed inpatient substance abuse treatment and until the U.S. Probation Office verified that she is lawfully licensed by the State of Kansas to operate a licensed daycare center and house a foster child. The portions of the sentence requiring the defendant to complete an inpatient substance abuse program and requiring disclosure of the defendant's history of substance abuse were stayed pending this appeal.

White timely appeals her conviction and portions of the sentence imposed by the Magistrate Judge.

---

1. After examining the briefs and appellate record, this court has determined that oral argument would not materially assist the determination of this appeal. The case is therefore ordered submitted without oral argument.

2. "The purpose of the Assimilative Crimes Act is to provide a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable if committed within the surrounding [state] jurisdiction." *United States v. Sain*, 795 F.2d 888, 890 (10th Cir.1986). "The Act fills in gaps in federal criminal law by providing a set of criminal laws for federal enclaves." *Id.*

### Sufficiency of the Evidence: Standard of Review

■ In reviewing the sufficiency of the evidence, the court must

> view the evidence in the light most favorable to the government in order to determine whether all of the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, 'convinces us that a rational factfinder could reasonably have found' the appellant guilty of the crime charged beyond a reasonable doubt.

*United States v. Chavez–Palacios,* 30 F.3d 1290, 1293–94 (10th Cir.1994) (*quoting Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979)). "[T]he evidence presented to support the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *United States v. Sanders,* 928 F.2d 940, 944 (10th Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991) (internal quotations omitted). In determining whether there was in fact some evidence in the record to support the jury's verdict, *see United States v. Hoenscheidt,* 7 F.3d 1528, 1530 (10th Cir.1993), we review the record de novo. *See United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Moreover, "an appellate court may not decide the credibility of witnesses as that is the exclusive task of the fact trier.... Once the jury has spoken, this court may not reweigh the credibility of the witnesses." *United States v. Youngpeter,* 986 F.2d 349, 352–53 (10th Cir.1993); *see also United States v. Uresti–Hernandez,* 968 F.2d 1042, 1045 (10th Cir.1992) ("Credibility determinations are for the jury, not the appellate court"). By viewing the evidence in the light most favorable to the government, we necessarily assume the jury found the government's evidence credible. *United States v. Torres,* 53 F.3d 1129, 1133–34 (10th Cir.1995).

### Sufficiency of the Evidence

■ White contends that the evidence presented at trial was insufficient to support her conviction of driving under the influence of alcohol. White argues that the evidence, at best, proved that she was very tired, having not slept for twenty-two hours prior to driving home in the early morning hours of December 31, 1993. White attributes any unsteadiness during the field sobriety test to the fact that she was out of shape, overweight and not particularly agile. In short, White contends that no rational factfinder could conclude that she was intoxicated from alcohol as she drove her vehicle on December 31, 1993.

The government responds, arguing that there was sufficient direct and circumstantial evidence for the Magistrate Judge to find White guilty of driving under the influence of alcohol.

K.S.A. 8–1567, which makes it illegal to drive under the influence of alcohol or drugs, provides in pertinent part:

> (a) No person shall operate or attempt to operate any vehicle within this state while:
>
> . . . . .
>
> (3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle.

Viewing the evidence in the light most favorable to the government, there is sufficient evidence upon which a rational factfinder could find White guilty of the driving under the influence of alcohol. The following is a partial summary of the facts supporting the defendant's conviction. On December 31, 1993, Military Police Officer Christopher S. Jensen observed a white Jeep "driving in an erratic manner," swaying across the center line, the double yellow line, and all four tires across the solid white line on Huebner Road, Fort Riley Military Reservation. After observing the vehicle cross the lane three times, Officer Jensen stopped the vehicle.

The driver of the vehicle was Diana White. During his conversation with White as she searched for her driver's license, vehicle registration and insurance, Officer Jensen noticed the "very strong" odor of alcohol on her breath. White fumbled for and dropped her keys several times as she attempted to unlock the glove compartment to obtain the

requested documents. Officer Jensen noticed five unopened cans of beer on the passenger side of the floor.

Based upon these facts, Officer Jensen administered three field sobriety tests. In Officer Jensen's opinion, White failed each test. White was taken into custody and transported to the Provost Marshal's Office at Fort Riley. At the Provost Marshal's Office, a second battery of field sobriety tests was administered by Dennis Sylvester, traffic accident investigator for the Kansas Military Police. These tests were recorded by video camera.[3] In Sylvester's opinion, White failed each of the three tests. White was informed about the implied consent law;[4] White was advised that her refusal to submit to the breath test could result in a one year driver's license suspension. White refused to consent to a chemical test of her breath.[5] At trial, White admitted that she had consumed approximately a pitcher of beer—about four glasses of beer—on the evening of December 30, 1993.

Based upon the evidence presented, the magistrate judge found (1) that the defendant was clearly driving outside of the marked lane in an erratic manner; (2) the defendant had a strong odor of alcohol on her person; (3) the field sobriety test that was videotaped "showed some unsteadiness on the part of the defendant;" and (4) that the defendant had consumed four beers before driving, having not slept in the past 22 hours. The magistrate judge found "that the defendant was under the influence of alcohol to a degree that rendered her incapable of safely driving a vehicle."

The magistrate judge's finding is supported by the record. Contrary to the defendant's suggestion, her performance on the videotape was not so steady that it is unreasonable to conclude that she was not intoxicated. Based upon the facts summarized, a rational factfinder could conclude that there was sufficient direct and circumstantial evidence to sustain White's conviction. *See United States v. Thurston,* 771 F.2d 449, 452 (10th Cir.1985) (in reviewing the sufficiency of the evidence, "circumstantial evidence is entitled to the same weight as that given to direct evidence"); *State v. Ward,* 233 Kan. 144, Syl. ¶ 2, 660 P.2d 957 (1983) ("A conviction of driving under the influence of intoxicating liquor (K.S.A. 8–1567) may be sustained although based solely on circumstantial evidence.").

## Sentencing Issues

### Was the sentence imposed by the magistrate judge illegal?

■ Prior to sentencing, White was evaluated by the Pawnee Mental Health Center, Manhattan, Kansas. During that evaluation, White disclosed information indicating a history of substance abuse. White contends that the portion of the sentence requiring her to disclose her history of substance abuse to the Riley County Health Department and to the Riley County Social and Rehabilitation Services "is an illegal sentence in that it violates the law regarding the confidentiality of alcohol and drug abuse patients pursuant to 42 C.F.R. Ch. 1, Part 2." White indicates that the information she is required to disclose "surfaced through the drug and alcohol evaluation, the results of which made their way into the presentence report." White argues that requiring her to disclose this history is illegal as the regulations specifically prohibit the disclosure of this information.

The government responds, arguing that White's reliance on those regulations is misplaced. The government contends that those regulations only prohibit disclosure of information related to the treatment of drug or alcohol abuse by the drug abuse treatment program. Therefore, it is the government's position that those regulations do not preclude the magistrate judge from imposing the requirement of disclosure as a condition of White's probation, and hence the sentence imposed was not illegal. The government

---

3. The videotape of the second battery of sobriety tests was admitted at trial as Defendant's Exhibit A.

4. *See* K.S.A.1994 Supp. 8–1001(a).

5. In *South Dakota v. Neville,* 459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983), the Supreme Court held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend the Fifth Amendment's right against self-incrimination.

also notes that under 18 U.S.C. § 3661, the court may consider, without limitation, information concerning the background, character, and conduct of a convicted person for the purpose of imposing an appropriate sentence.

The court has carefully reviewed the regulations cited by White. The court's interpretation of these regulations is largely unguided by any case law discussing or applying these regulations. The parties have cited no cases supporting their respective positions. Several computer searches by the court have located only a handful of cases even citing these regulations. As the government suggests, the regulations do not act as a bar to the disclosure required by the sentence imposed by the magistrate judge. In general, the regulations found at 42 C.F.R. §§ 2.1–2.67 are designed to protect the confidentiality of drug and alcohol abuse patient records which are maintained in connection with the performance of any federally assisted alcohol and drug abuse program. 42 C.F.R. § 2.3. The confidentiality of those records is not absolute, as the regulations provide for disclosure under certain, limited circumstances. In this case, § 2.35, titled "Disclosures to elements of the criminal justice system which have referred patients," is the provision containing the relevant exception:

(a) A program may disclose information about a patient to those persons within the criminal justice system which have made participation in the program a condition of the disposition of any criminal proceedings against the patient or of the patient's parole or other release from custody if:

(1) The disclosure is made only to those individuals within the criminal justice system who have a need for the information in connection with their duty to monitor the patient's progress (e.g., a prosecuting attorney who is withholding charges against the patient, a court granting pretrial or posttrial release, probation or parole officers responsible for supervision of the patient); and

(2) The patient has signed a written consent meeting the requirements of § 2.31 (except paragraph (a)(8) which is inconsistent with the revocation provisions of paragraph (c) of this section) and the requirements of paragraphs (b) and (c) of this section.

. . . . .

(d) Restrictions on redisclosure and use. A person who receives patient information under this section may redisclose and use it only to carry out that person's official duties with regard to the patient's conditional release or other action in connection with which the consent was given.

Under the exception created by § 2.35, the sentence imposed by the magistrate judge was not illegal. This conclusion is based upon a logical interpretation of the regulation. The information concerning White's history of substance abuse will be disclosed in connection with the magistrate judge's performance of his official duties of pronouncing and imposing sentence. Moreover, if White's analysis and interpretation of the regulations were correct, any mention by the magistrate judge of the information gleaned from the evaluation performed by the Pawnee Mental Health Center during sentencing in open court would potentially constitute a violation of those regulations, subjecting the magistrate judge to criminal penalties. Clearly, this is not and cannot be the law. Because sentencing hearings are generally open to the public, *see In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir.1986) ("Sentencings have historically been open to the public."); D.Kan.Rule 304(d) ("Unless otherwise provided by law, all criminal proceedings shall be held in open court and shall be available for attendance and observation by the public."), the court and the attorneys for both the defendant and the government would be precluded from discussing any portion of the evaluation in determining the appropriate sentence to be imposed in open court. White's interpretation of the regulations would effectively hamstring the court's ability, if it so chose, to explain in open court the reasons for imposing the sentence it deemed appropriate. In this case, the magistrate judge apparently pronounced White's sentence in open court.

In sum, the sentence imposed by the magistrate judge was not illegal.

**Even if the sentence imposed was not illegal, was the sentence nevertheless an abuse of discretion?**

White contends that even if the sentence imposed was not illegal, the magistrate judge abused his discretion by requiring her to disclose her history of substance abuse to the licensing agencies of her daycare business. White argues that her history of substance abuse "is not reasonably related to the crime committed (*i.e.,* DUI), and is unnecessarily harsh and excessive in achieving the goals purportedly sought by the Court." White contends that this condition only serves as a means of punishing her and has no relationship to her daycare business that is run out of her home. White argues that the portion of the sentence requiring disclosure of her history of substance abuse violates United States Sentencing Commission, *Guidelines Manual,* § 5F1.5. White contends that the conditions imposed by the magistrate judge will cause irreparable damage lasting "well beyond her one year term of probation."

White also contends that the contested condition violates principles of federalism and her right to due process. White contends that the State of Kansas has an elaborate licensing scheme for daycare operators and that the magistrate judge's sentence has the effect of usurping that process. White argues that her right to due process was violated as she was not given prior notice that her sentence would include a condition requiring disclosure of her history of substance abuse to the daycare licensing agencies.

The government responds, arguing that the conditions of probation imposed by the magistrate judge bore a reasonable relationship to the goals of rehabilitating the offender and protecting the public. The government argues that the potential risk to third parties, in particular children entrusted to White's care, is precisely the type of situation the court seeks to avoid in the future by imposing the condition that she disclose her conviction and substance abuse history to the daycare licensing agencies. The government contends that the magistrate judge did not place the condition of disclosure as an occupational restriction. Instead, White's argu-

ments are based upon the consequences such disclosure may have on her license.

In regard to White's federalism argument, the government argues that the existence of the state procedures simply protect an individual from having their license arbitrarily revoked and that those procedures will afford her "an opportunity to explain to the licensing authorities why she should still be a licensed daycare provider in light of her conviction and her background, character, and conduct."

## Analysis

▮▮▮ "A court has broad discretion in setting conditions of probation." *United States v. Turner,* 44 F.3d 900, 903 (10th Cir.) (*citing United States v. Lawson,* 670 F.2d 923, 929 (10th Cir.1982)), *cert. denied,* —— U.S. ——, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995). The sentencing court's discretion is bounded by "the requirement that conditions of probation be reasonably related to the simultaneous goals of rehabilitating the defendant and protecting the public." *United States v. Jordan,* 890 F.2d 247, 255 (10th Cir.1989); *see United States v. Hussong,* 778 F.2d 567, 569–570 (10th Cir.1985) ("[A] sentencing judge has broad discretion to impose conditions of probation reasonably related to protecting the public and rehabilitating the defendant.").

A defendant who seeks to overturn a particular condition of probation must establish that the court acted outside its discretionary authority in imposing it. [*United States v.*] *Tolla,* 781 F.2d [29] at 32 [ (2d Cir.1986) ]. It is axiomatic that particular conditions of probation should be tailored to meet the special problems of a particular defendant and that conditions of probation must be viewed in light of all the circumstances properly before the court. *Jordan,* 890 F.2d at 255. In the Tenth Circuit, "[a]n abuse of discretion occurs when the district court's decision is 'arbitrary, capricious or whimsical,' or results in a 'manifestly unreasonable judgment.'" *Moothart v. Bell,* 21 F.3d 1499, 1504–1505 (10th Cir. 1994) (*quoting United States v. Wright,* 826 F.2d 938, 943 (10th Cir.1987)).

USSG § 5F1.5 provides in part:

### Occupational Restrictions

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

### Commentary

*Background:* The Comprehensive Crime Control Act authorizes the imposition of occupational restrictions as a condition of probation, 18 U.S.C. § 3563(b)(6), or supervised release, 18 U.S.C. § 3583(d). Pursuant to section 3563(b)(6), a court may require a defendant to:

*[R]efrain, in the case of an individual, from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances.*

Section 3583(d) incorporates this section by reference. The Senate Judiciary Committee Report on the Comprehensive Crime Control Act explains that the provision was "intended to be used to preclude the continuation or repetition of illegal activities while avoiding a bar from employment that exceeds that needed to achieve that result." S.Rep. No. 225, 98th

Cong., 1st Sess. 96–97. The condition "should only be used as reasonably necessary to protect the public. It should not be used as a means of punishing the convicted person." Id. at 96. Section 5F1.5 accordingly limits the use of the condition and, if imposed, limits its scope, to the minimum reasonably necessary to protect the public....

See 18 U.S.C. § 3563(b)(6).

The court concludes that the sentence imposed by the magistrate judge was not an abuse of discretion. The court also concludes that the sentence imposed did not violate principles of federalism, nor was the lack of notice concerning the disclosure requirements prior to imposing the sentence a violation of due process.

■ Requiring White to disclose her history of substance abuse was reasonably related to the simultaneous goals of rehabilitation and protection of the public. White implicitly concedes that the information about her history of substance abuse would be of interest to the state's daycare licensing agencies, as she appears to assume that the revelation of that information will inevitably lead to the revocation of her license. Also implicit in White's arguments to this court is the fact that she has not previously disclosed this information to the daycare licensing agencies.

The magistrate judge's concern about the safety of young children entrusted to the care of White is clearly reasonable. Because White has apparently not volunteered the information about her history of substance abuse to the daycare licensing agencies, the magistrate judge reasonably concluded, in the exercise of his discretion, that it was appropriate to require White to divulge this information to the appropriate licensing agencies. Nor does the court believe that this requirement is wholly unrelated to the crime of which White was convicted. Alcohol is a drug and the operation of a vehicle while intoxicated poses a serious danger to the community. The potential dangers of caring for children while under the influence of alcohol or other drugs are self-evident.

■ Nor does the disclosure requirement imposed by the magistrate judge violate principles of federalism. The disclosure requirement imposed by the magistrate judge did not preempt the authority of the state licensing agencies or the procedures established by the state for the regulation of daycare providers. The sentence imposed simply required White to disclose her history of substance abuse to the state licensing agencies. As the government suggests, this action does not usurp, circumvent or thwart the procedures developed by the state related to the licensing of daycare providers. Instead, this requirement merely furnishes relevant information to the appropriate state agency.

■ White's due process rights were not violated. The court notes that no contemporaneous objection was made at the time the sentence was pronounced. In any event, the failure to provide advance warning did not violate White's due process rights. In *United States v. Mills*, 959 F.2d 516 (5th Cir. 1992), the defendant pled guilty to charges of mail fraud and altering odometers on cars sold from his GM dealership. A portion of his criminal sentence forbade him from working in car sales during his period of supervised release. On appeal, the defendant argued that the occupational restrictions were tantamount to an upward departure, requiring prior notice under the Supreme Court's decision in *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). In *Burns*, the Supreme Court held that a sentencing court may not depart upward from the sentencing range established by the Sentencing Guidelines without first notifying the parties that it intends to depart.

The occupational restriction imposed upon Mills in this case is not an "upward departure" because it falls within the range of sentencing conditions available to the court under the Guidelines. In contrast, *Burns* and the other cases cited by the government involved situations in which the courts imposed a term of confinement exceeding the maximum range set forth in the Guidelines' sentencing table. In our case, however, Appellant received only the mid-range confinement of seven months. The occupational restric-

tions were simply an exercise of the district judge's authorized discretion to impose additional terms of probation or supervised release. We do not believe it to be in the interest of justice or the efficient administration of the sentencing process to extend the notice requirements of *Burns* to cases where the defendant's term of confinement is not at stake. Requiring trial judges to give prior notice of their intent to impose an occupational restriction would only further encumber the lengthy sentencing process without adding anything to defendants' existing procedural protections.

. . . . .

If either side is dissatisfied with the proposed sentence, counsel can request a continuance for further preparation. If that motion is denied, counsel can move for reconsideration or modification after the sentence is imposed, 28 U.S.C. § 2255, and failing success at the district court level, can appeal.

959 F.2d at 519.

Although a more prudent course might have been to provide the defendant with prior notice of the conditions of probation the court intended to impose, the manner in which the defendant's sentence was imposed did not violate White's due process rights.

**Request to Place Appeal Under Seal**

In her brief, White apparently requests that this appeal be placed under seal. However, because no appropriate motion was filed to seal this appeal, this case has not been placed under seal. Nevertheless, in the event the defendant intends to pursue an appeal to the Tenth Circuit, the court would entertain a request to place this appeal under seal if such a request is made within ten days of the date this order is filed. In any event, the court will not distribute this order for publication until at least ten days have passed since the date this order is filed.

IT IS THEREFORE ORDERED that the conviction and sentence imposed by the magistrate judge are AFFIRMED. This case is

remanded to the magistrate judge for execution of the sentence imposed.