**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Beatrix McKINNEY, Defendant–
Appellant.**

No. 00–40009–01–SAC.

United States District Court,
D. Kansas.

June 9, 2000.

Christopher A Kennebeck, Office of Staff Judge Advocate, Ft. Riley, KS, for plaintiff.

Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

Defendant, Ms. Beatrix McKinney, appeals the magistrate court's final judgment of her conviction of simple assault pursuant to 18 U.S.C. § 113(a)(5). (Dk. 1). McKinney was sentenced to one year probation on the standard conditions and a special condition that she enroll in and successfully complete a mental health program specifically related to anger management.

### ISSUES

Two issues are presented for the court's consideration: 1) whether there was sufficient evidence to establish that McKinney committed the crime of assault in violation of 18 U.S.C. § 113(a)(5); and 2) whether there was sufficient evidence to establish that the conduct underlying the crime charged occurred "within the special maritime and territorial jurisdiction of the United States" and therefore establishing federal jurisdiction.

### FACTS

Mrs. Joyce Straight ("Straight") testified that on June 11, 1999, while she was at the Ft. Riley horse stables, she was approached by the defendant, Ms. McKinney ("McKinney"), who asked Straight why the military police ("MP") had questioned her about a credit card theft that had occurred at the stables. The conversation then turned to McKinney's late rent at the stable, and McKinney asked Straight for additional time to pay her rent. Straight then warned McKinney about her use of profanity at the stables and her dogs being out-of-control. McKinney then began to exhibit anger, and they parted ways. A little time later, while McKinney was feeding her horse, she yelled, "Nothing better happen to my horse." Straight replied, "Same with mine." Straight testified that McKinney then yelled to her, "I'll kill you, you fucking bitch" as McKinney was "heading towards" her vehicle.

Straight testified she believed McKinney "would come at [her]," and was in fear of being battered by McKinney because Straight had previously seen McKinney drive her vehicle recklessly. On the aforementioned prior occasion, McKinney was upset about something and drove her truck directly at Mr. and Mrs. Straight as if to ram the truck into them. Straight further testified that, on the prior occasion, McKinney was traveling at "probably twenty miles per hour when she slammed on her brakes." When McKinney came skidding to a halt, her truck was only three feet from the bumper of Straight's side of the car.

On June 11, 1999, after McKinney had yelled at her, Straight got in her car, called 911, and waited in her car until the law enforcement officers arrived.

Both Straight and McKinney testified that the threat occurred on Ft. Riley. It was the military police and not the county police who responded to Straight's call. The Military Police Investigations Unit ("MPI") had investigated a theft that occurred at the same Ft. Riley stables prior to this occurrence.

### ARGUMENTS OF THE PARTIES

#### A. JURISDICTION

McKinney argues that proof of a jurisdictional element is no different than proof of any other element. McKinney asserts that because the location of the crime was discussed only in relation to Ft. Riley stables, the government failed to prove beyond reasonable doubt that the crime occurred "within the special maritime or territorial jurisdiction of the United States." 18 U.S.C. § 113(a).

The government concurs with McKinney's assertion that proof of the jurisdictional element is no different than proof of any other element. The government asserts, however, that the trial court was able to draw reasonable inferences from

basic facts that allowed the trier of fact to find that the jurisdictional element was proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Finally, the government claims that there is an abundance of testimony from which a rational trier of fact could infer that the Ft. Riley horse stables are indeed on the military installation of Ft. Riley.

### B. ASSAULT

The Tenth Circuit explains that "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." *United States v. Gauvin,* 173 F.3d 798, 802 (10th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 250, 145 L.Ed.2d 210 (1999). The Tenth Circuit further defines assault as "an attempted battery" or as "placing another in reasonable apprehension of a battery." *Id.* "Simple assault" is committed by either wilful attempts to inflict injury upon the person of another or threat to inflict injury upon a person of another which, coupled with apparent present ability, causes reasonable apprehension of immediate bodily harm. *United States v. Johnson,* 637 F.2d 1224 (9th Cir.1980).

McKinney relies on a treatise contending that verbal threats alone are insufficient to place a reasonable person in apprehension of being battered. Instead, threats must be accompanied by an overt act. WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW, § 7.16(b) (1986). McKinney argues that even if there was a threat, the mere proximity of McKinney to a vehicle does not rise to the level of an overt act which would cause the type of imminent apprehension of bodily harm necessary to prove assault. Had McKinney shouted a threat and immediately run to her truck and driven it toward Straight, then there would be substance for an assault. McKinney concedes that

the conversation deteriorated into her calling Straight a disgrace, but alleges that words alone did not amount to an assault.

The government contends that federal case law has made the definition of simple assault quite broad and that there is no federal case law corroborating that there must be some "overt act" in order for there to be an assault. The government further argues that an assault is "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm."[1] *United States v. Skeet,* 665 F.2d 983, 986 (9th Cir.1982). Straight argues that she feared for her own safety because she saw McKinney heading towards McKinney's vehicle when the threat was made and because she had seen McKinney drive angrily on a prior occasion. Straight believed that McKinney would use her vehicle as a weapon.

The government does not argue that McKinney attempted to batter Straight. Rather, the government contends that McKinney had the present apparent ability to assault the victim, and that the victim reasonably feared bodily harm.

### ANALYSIS

### A. STANDARD OF REVIEW

When reviewing a magistrate's order, the court must review the sufficiency of the evidence by

> "view[ing] the evidence most favorable to the *government in order to* determine whether all of the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, 'convinces us that a rational factfinder could reasonably have found' the appellant guilty of the crime charged beyond a reasonable doubt."

*United States v. White,* 902 F.Supp. 1347 (D.Kan.1995). "[T]he evidence presented to support the conviction must be substan-

---

1. Although the case law, relied upon by the government, addresses "apparent present ability," the case law does not substantiate the clause as an element of criminal simple assault.

**1128**

tial; that is, it must do more than raise a mere suspicion of guilt." *Id.* (*quoting United States v. Sanders,* 928 F.2d 940, 944 (10th Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991)).

 The district court conducts a *de novo* review of the magistrate judge's order. *United States v. Jones,* 980 F.Supp. 359, 360 (D.Kan.1997), *aff'd,* 127 F.3d 1110 (10th Cir.1997). When conducting *de novo* review of a magistrate judge's order, the district court may incorporate the record of the proceedings conducted by a magistrate judge, including the exhibits admitted there. *Id.* When reviewing a magistrate's order, we review questions of law *de novo. United States v. Loving,* 80 F.Supp.2d 1200 (D.Kan.1999) (*citing United States v. Hawley,* 93 F.3d 682, 690 (10th Cir.1996)).

**B. JURISDICTION**

 The Tenth Circuit has not addressed the jurisdictional issue of what quantity of evidence is sufficient to draw reasonable inference of federal jurisdiction.[2] The Second Circuit holds that uncontroverted, competent testimony is sufficient to support an inference of federal jurisdiction. *United States v. Hernandez-Fundora,* 58 F.3d 802, 809 (2nd Cir.), *cert. denied,* 515 U.S. 1127, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995). There was no assertion at trial that the assault occurred any place other than on Ft. Riley. Because the MP's responded to Straight's 911 call and because MPI was investigating the previous credit card theft, the trial court was able to draw reasonable inferences from basic facts that allowed the court to find that the jurisdictional element was proven beyond a reasonable doubt. *Jackson,* 443 U.S. at 318, 99 S.Ct. 2781.

**C. ASSAULT**

The sole issue concerning defendant's conviction of assault is whether there must be an overt act accompanying the threat.

 The Tenth Circuit has upheld a trial court's instruction to the jury which stated in relevant part:

[a]ny willful attempt to threat [sic] to inflict injury upon the person of another, when coupled with an apparent present ability to do so, or any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm, constitutes an assault.[3]

*United States v. Calderon,* 655 F.2d 1037 (10th Cir.1981). The Tenth Circuit holds, "We do not think it is requisite to the validity of th[e] indictment that the government specify the particular overt acts employed to consummate the offense." *Mims v. United States,* 332 F.2d 944, 946 (10th Cir.), *cert. denied,* 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964). The court has reviewed the authority relied upon by McKinney and Tenth Circuit law and finds that an overt act is not an element of criminal assault.

 McKinney threatened to kill Straight and began walking towards her car. That fact, and the fact that Straight had seen McKinney drive threateningly at her in the past, gave Straight reasonable apprehension of immediate bodily harm. Straight's apprehension of harm was further demonstrated when she called 911.

IT IS THEREFORE ORDERED that the magistrate court's final judgment of McKinney's conviction of simple assault (Dk.1) is affirmed.

**2.** Of course judicial notice may be taken at any time, including on appeal. *United States v. Burch,* 169 F.3d 666, 671 (10th Cir.1999). Whether an offense occurred within particular geographical boundaries is an appropriate

subject for judicial notice. *Id.* In this case, however, the court does not take such notice.

**3.** See footnote 1.