**UNITED STATES COURT OF APPEALS**

**April 15, 2009**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MICHAEL ALEXANDER BACON,

     Defendant-Appellant.

No. 08-4125
(D.C. No. 2:07-CR-00910-TC-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **EBEL**, and **GORSUCH**, Circuit Judges.

Michael Bacon appeals his sentence of 60 months' imprisonment for burglary. He contends that the district court failed to comply with Federal Rule of Criminal Procedure 32 by neglecting to provide him the opportunity to comment on a letter it received prior to sentencing from a county prosecutor concerning his prior criminal conduct. We conclude that any error was harmless because the letter added nothing to what was already apparent from the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

undisputed facts in the presentence report available to the parties. Accordingly, we affirm.

* * *

After Mr. Bacon and his wife, Freeda Bacon, were indicted for their roles in a pair of post office burglaries, they both pled guilty. Prior to their sentencing, a Sevier, Utah county attorney wrote a letter to the Assistant United States Attorney prosecuting both Mr. and Ms. Bacon. The letter urged leniency for Ms. Bacon, but not for Mr. Bacon:

> Allow me to express the appreciation of many people in this area of the state for your prosecution of Michael Bacon. In every sense of the word, he is a menace to society.
>
> However, I am obligated to request leniency on behalf of his wife Freeda. She has provided much useful information and cleared many cases for us. I should also note that she has been in no trouble since Mr. Bacon was locked up. With her small child, I hope you will consider probation and no incarceration.

Supp. Vol. III

This letter found its way from the U.S. Attorney's office to the district court, though the timing and mode of its transmission is not clear from the record before us. At Ms. Bacon's sentencing hearing, the district court referred to the letter "from the Sevier County Attorney, who requests that in essence I throw the book at Michael Bacon, but that I put Ms. Freeda Bacon on probation, which I am inclined to do." Supp. Vol. I. at 2-3. The district court sentenced Ms. Bacon to 24 months of probation.

Nine days later, the court held a sentencing hearing for Mr. Bacon. The pre-sentencing report ("PSR") detailed Mr. Bacon's 15 prior convictions, including five burglaries, one theft, two attempted uses of another's credit card or financial transaction card, one forgery, one arson, one threat against life or property, and one possession of controlled substances. The PSR resulted in a criminal history score of 33, a criminal history category of VI, and a recommended guideline range of 30 to 37 months.

At the sentencing hearing, the government sought an upward departure and a sentence between 48 and 60 months. The government argued that Mr. Bacon's criminal history category under-represented his prior criminal history and the likelihood he would commit future crimes. USSG § 4A1.3(a)(1). Meanwhile, Mr. Bacon sought a downward departure, arguing that his difficult childhood predisposed him to illegal activities. At the sentencing hearing, the court recognized Mr. Bacon's tragic upbringing but ultimately concurred with the government's recommendation, sentencing Mr. Bacon to 60 months. The court neither referenced the letter nor disclosed its existence in the course of sentencing Mr. Bacon.

* * *

On appeal, Mr. Bacon claims that he learned about the Sevier County Attorney letter only after his sentence, and that the court did not comply with Fed.R.Crim.P. 32(i)(1) by failing to afford him the opportunity to comment on its

description of him as a "menace to society." The government does not dispute that Mr. Bacon was unaware of the letter at the time of his sentencing, but does dispute whether any Rule 32 violation took place. The government argues that Rule 32 only applies to information on which the district court relied at sentencing and there is no indication the court relied on the letter in Mr. Bacon's sentence. Alternatively, the government submits, the district court did not have to disclose the letter under Rule 32 because its description of him as a "menace to society" was merely a pejorative characterization, not factual information.

All of these arguments are beside the point, however, if, assuming a Rule 32 violation occurred, the violation was harmless.[1] Appellate courts exist, after all, to correct errors that affect a defendant's "substantial rights," Fed. R. Crim. P. 52(a), not those that don't, *id.* (stating that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"). Accordingly, before reversing a district court's sentence we are required by law to ask "whether the [putative] error had a 'substantial influence' on the sentencing determination or leaves one in 'grave doubt' as to whether it had such effect."

---

[1] Ordinarily, an asserted error to which a party did not object before the district court is reviewed by this court for plain error. *See United States v. Jordan*, 890 F.2d 247, 250 (10th Cir. 1989). We find plain error review inappropriate in this circumstance because Mr. Bacon was unaware of the letter at the sentencing hearing and thus had no opportunity to object on Rule 32 grounds. *See* Fed. R. Crim. P. 51(b) ("If a party does not have opportunity to object to a ruling or order, the absence of objection does not later prejudice that party.").

*United States v. Garcia*, 78 F.3d 1457, 1465 (10th Cir. 1996) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

On the facts of this case, we see no way to answer that question affirmatively. The district court's decision to grant an upward departure on the basis sought by the government – namely, that the criminal history category assigned to Mr. Bacon by the guidelines failed to capture fully his criminal history or the likelihood that he would commit future crimes, U.S.S.G. § 4A1.3 – was supported by overwhelming evidence in the PSR made available to the parties. The PSR detailed 15 prior convictions spanning 18 years. Mr. Bacon's resulting criminal history score of 33 was almost three times the number needed for a criminal history category of VI, the highest category contemplated by the guidelines. In addition, Mr. Bacon's criminal history set forth in the PSR established an increasing propensity for violence, as well as a disregard for the terms of his sentences. We count at least two probation revocations, three parole revocations, and two escapes. In connection with his 2004 conviction for arson and threat against life or property, the victim reported that Mr. Bacon "threatened to dismember him and gouge out his eyes" if he didn't leave the state; to show that he was serious, he said he would torch a building and "[a]bout an hour later, a storage shed within one block of the [victim's] home was set on fire." PSR at 20-21. In connection with a 2007 forgery scheme, officers learned that Mr. Bacon "put a knife to [a confederate's] throat and he told her that if she were not

a relative she would already be dead. [Mr. Bacon] told her to leave, and [the confederate] moved out of the Richfield area." *Id.* at 23.

While the information contained in the PSR was more than sufficient to support the district court's sentence, Mr. Bacon offers us no countervailing reason to think that the unproduced letter had any, let alone a substantial, influence on the district court's ultimate sentencing determination. He thus gives us no path for overcoming the harmless error hurdle imposed by Fed. R. Crim. P. 52. Neither are we able to discern any such plausible path for ourselves. To be sure, the letter attached a pejorative label to Mr. Bacon, and we have no need to rule out the possibility some undisclosed pejorative characterization could, in some imaginable case, have a substantial impact on a court's sentencing decision. But in the case before us the stark and undisputed facts of Mr. Bacon's criminal history, as embodied in the PSR, speak much louder than the pejorative found in the letter. In fact, they all but drown it out. In these circumstances, we cannot help but conclude that the letter had no meaningful effect on the ultimate sentence Mr. Bacon received; his criminal past did.

The district court's sentence is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge